IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTOPHER M. BARROW, | ) | Civil No. 08-1437-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Kimberly K. Tucker
Swanson, Thomas & Coon
820 S.W. 2ⁿᵈ Avenue, Suite 200
Portland, OR 97204

        Attorney for Plaintiff

Dwight C. Holton
U.S. Attorney, District of Oregon
Adrian L. Brown
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Richard A. Morris
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Christopher Barrow brings this action pursuant 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the decision of the Commissioner should be affirmed.

## **Procedural Background**

Plaintiff has filed several applications for SSI benefits. He first filed an application for SSI benefits on February 17, 1998. Following a decision that was unfavorable initially and upon reconsideration, a hearing was held before an Administrative Law Judge (ALJ), who issued a decision dated September 10, 1999, finding that plaintiff was not disabled. Plaintiff sought review from the Appeals Council. In a decision dated November 27, 2002, the Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. In the decision at issue in the present action, the ALJ found that there was no reason to reopen or revise that decision.

Plaintiff filed an application for SSI benefits on June 27, 2000, alleging that he had been disabled from the time of his birth on May 2, 1972, because of anxiety, panic attacks, fear of public situations, headaches, and chest pain.  That application was denied initially and upon reconsideration.

On August 27, 2001, plaintiff filed his next application for SSI benefits.  After that application was also denied initially and upon reconsideration, plaintiff requested a hearing before an ALJ.

On April 17, 2003, a hearing was conducted by ALJ Dan Hyatt.  Plaintiff, who was represented by an attorney, appeared and testified.  Plaintiff's mother also testified.  The record was left open following the hearing, and a supplemental hearing was held on October 28, 2003, at which plaintiff appeared but did not testify.  Dr. Larry Hart, a psychologist, testified at the supplemental hearing as a medical expert (ME).

In a decision filed on December 5, 2003, ALJ Hyatt found that plaintiff was not disabled within the meaning of the Social Security Act (the Act).  That decision became the final decision of the Commissioner on April 1, 2005, when the Appeals Council denied plaintiff's request for review.

In a complaint filed in this court on May 31, 2005, plaintiff sought judicial review of that decision.  In an Opinion and Order filed on September 22, 2006, the Honorable Robert E. Jones affirmed the Commissioner's decision.  Plaintiff appealed that decision to the 9th Circuit Court of Appeals, which dismissed the appeal on March 21, 2007, pursuant to the parties' stipulation.  Based upon that stipulation, on April 12, 2007, Judge Jones remanded the action to the Agency for further proceedings, including a new hearing.

On July 17, 2008, a hearing was held before ALJ Hyatt.  Plaintiff, a ME, and a

vocational expert (VE) testified at the hearing.

In a decision filed on August 12, 2008, the ALJ again found that plaintiff was not

disabled within the meaning of the Act.  Plaintiff did not seek review of the decision by the

Appeals Council, and the decision became the final decision of the Commissioner.

On December 10, 2008, plaintiff filed the present action, seeking judicial review of

the Commissioner's decision.


**Factual Background**

Plaintiff was 38 years old when the ALJ filed his decision denying his application for

benefits.  He has a ninth grade education, and no record of gainful employment.


**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant

is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a

summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094,

1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in

substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the

claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate

the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more

severe impairments.  A claimant who does not have such an impairment is not disabled.  If

the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### Medical Record

The record of plaintiff's medical problems will be summarized only briefly here, and relevant portions will be examined in greater detail as required in the discussion below.

Plaintiff's impairments include an anxiety disorder, a depressive disorder, and a personality disorder that has been noted to include dependent, avoidant, and schizoid traits. At times he has abused alcohol. Plaintiff's impairments produce a number of symptoms, including social isolation, lack of motivation, poor communications skills, and problems with social interaction. In a chart note dated March 30, 2000, Dr. Joshua Boverman diagnosed panic disorder with agoraphobia, and noted that plaintiff had a "history of craniosnostosis, cranial surgery, and abnormal head CT." Dr. Boverman opined that plaintiff's history of cranial abnormalities and abnormal head CT "suggest a neurologic basis" for plaintiff's "lack of interest in tending to what others would consider ADLs or basic needs, such as companionship, romantic relations, employment and economic support."

### Vocational Expert's Testimony

At the most recent hearing, which was held in July, 2008, the VE agreed with the ALJ's observation that there was no evidence that plaintiff had ever "worked a day in his life. . . ." The ALJ posed a hypothetical describing a 36 year old man who had completed 8th grade, had no past relevant work experience, no exertional impairments, should have no

contact with the public, could perform occasional cooperative tasks with others, and was limited to simple, repetitive work. In response, the VE testified that such an individual could work as a janitor or as a warehouse worker. The VE described both of these jobs as medium exertional level, unskilled jobs. In response to questioning by plaintiff's counsel, the VE testified that an individual who, "for various impairment-related reasons," was unable to leave the house and would miss work more than two days a month could not sustain competitive employment.

### ALJ's Decision

At the first step of the sequential disability analysis, the ALJ found that plaintiff had not engaged in any substantial gainful activity since July 27, 2000, the protective date of his application for SSI benefits.

At the second step, the ALJ found that plaintiff's severe impairments included depression/dysthymia, anxiety-related disorder, personality disorder, and alcohol abuse.

At the third step of his analysis, the ALJ found that none of plaintiff's severe impairments met or medically equaled the requirements of an impairment in the Listings, 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

Next, in his analysis of plaintiff's residual functional capacity, the ALJ found that plaintiff had no exertional limitations, and that he could not perform work requiring any contact with the general public, could perform no more than occasional cooperative work tasks with co-workers, and was limited to simple, routine, repetitive work.

At the fourth step, the ALJ found that plaintiff had no past relevant work.

At the fifth step, he found that plaintiff could work as a janitor or as a warehouse worker, and that these jobs exist in substantial numbers in the national economy. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

In evaluating plaintiff's limitations, the ALJ found that plaintiff was "not entirely credible in comparison to the substantial evidence of record."

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771,

772(9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if

"the evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at

 1039-40.


### <u>Discussion</u>

Plaintiff contends that the ALJ did not properly evaluate the opinions of

non-examining doctors, erred in rejecting the opinions of treating and examining medical

sources, erred in rejecting the statements and testimony of plaintiff, plaintiff's mother, and

other lay witnesses, erred in failing to determine whether plaintiff's alcohol use was material

to his disability, erred in his assessment of plaintiff's residual functional capacity, and erred in

failing to formulate a hypothetical for the VE which included all of plaintiff's impairments.


### 1. <u>Opinions of non-examining doctors</u>

In the 2007 Order remanding this action, the Appeals Council noted that the ALJ had

failed to "take into consideration all the limitations found by the state agency's medical

consultants," who had "indicated the claimant is . . . limited in his ability to get along with

coworkers . . . ."  The Appeals Council noted that the ALJ's earlier decision did "not explain

why some limitations were accepted and others rejected."

Plaintiff contends that, on remand, the ALJ failed to properly evaluate the opinions of

the state agency reviewing psychologists concerning plaintiff's limitations.  He notes that the

ALJ "explicitly rejected" the reviewing psychologists' conclusion that he has a moderate

limitation in concentration, persistence and pace, and asserts that the ALJ provided

inadequate reasons supporting that rejection.  Plaintiff further contends that the ALJ

"implicitly rejected" large portions of the balance of these reviewers' opinions.

I disagree.  Dr. LeBray, a reviewing medical consultant, found that plaintiff could

perform simple, paced tasks, routine and occasionally complex tasks, could not have frequent

contact with the public and co-workers, and could get along with a supportive supervisor who

was not overly harsh or critical.  Dr. Lahman, a reviewing consultant, opined that plaintiff

could perform simple tasks and occasional complex tasks during a normal work day and

week, should have limited public contact and only routine, brief peer interaction.  He added

that plaintiff would work best with minimal supervision, and needed help setting independent

plans.  Dr. Rethinger found, and Dr. Hennings confirmed, that plaintiff could concentrate

well enough to perform 1-2-3 step tasks, could work at jobs that did not require extensive

contact with peers and the public, and could benefit from goal direction.

In his decision following remand, the ALJ gave controlling weight to the state

agency's reviewing psychologists' assessments of plaintiff's limitations, which he found were

consistent with and supported by the medical evidence.  The ALJ did not "implicitly reject

large portions" of the reviewing psychologists' opinions.  He did state that he did not give any

weight to Dr. Laham's opinion that plaintiff had moderate limitations in his ability to

maintain attention and concentration for extended periods, because plaintiff engaged in

activities that required that ability.  The ALJ also noted that the moderate limitation in ability

to maintain attention and concentration assessed by Dr. Laham had not been reported in any

earlier or succeeding assessment of plaintiff's mental residual functional capacity.

In doing so, he provided sufficient reasons for rejecting Dr. Laham's opinion

concerning plaintiff's limitations in ability to maintain attention and concentration.  In his

RFC analysis, the ALJ accommodated plaintiff's other non-exertional limitations by restricting plaintiff to jobs that required no contact with the general public, required no more than occasional cooperative work tasks with co-workers, and involved routine, repetitive work.  These restrictions accounted for all of the limitations set out in the reviewing psychologists' assessments, with the exception for any limitation based upon difficulty maintaining attention and concentration, a limitation which the ALJ had provided sufficient support for rejecting.

2. <u>Opinions of Treating and Examining Medical Sources</u>

Plaintiff contends that the ALJ rejected the opinions of several treating and examining medical sources without providing the requisite support.

a. <u>Applicable rules</u>

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989).  Accordingly, an ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions.  <u>Lester v. Chater</u>, 81 F.2d 821, 830-31 (9th Cir. 1995).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician.  <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ

must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting an examining physician's opinion that is contradicted by another physician.  Andres v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

b. Analysis

Dr. Joshua Boverman

In March, 2002, Dr. Boverman, a psychiatrist, performed a clinical interview and observation, conduced a mental status examination, and reviewed plaintiff's records. Dr. Boverman stated that there might be a neurologic basis for plaintiff's lack of interest in activities of daily living and "basic needs."  He diagnosed plaintiff with panic disorder with agoraphobia and "probable schizoid personality disorder, secondary to a general medical condition," and opined that his Global Assessment of Functioning score (GAF) was 35.[1]

The ALJ noted that Dr. Boverman's opinion concerning plaintiff's GAF was contradicted by concurrent opinions from Heidi Brockman-Astrue and Dr. Wood, who assigned GAF scores of 60 and 58.  Plaintiff correctly notes that the ALJ stated that Dr. Boverman's opinion had been "superseded by the discharge summary, rendered by Dr. Heidi Brockman-Astue, on April 7, 2000, in which she opined that plaintiff had a 'mental or emotional disorder where services would be beneficial, but not necessary to function in daily life . . . .' "

---

[1]A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders 32-24 (4th ed. Text Revision 2000)(DSM-IV-TR).

Plaintiff correctly notes that Brockman-Astue's signature did not include a notation indicating that she was a doctor, but instead identified her as an "intern." He also correctly notes that the opinions of doctors, who are considered "acceptable medical sources," are generally given more weight than the opinions of "other sources" like Brockman-Astrue. However, as the Commissioner correctly notes, though "other sources" like Brockman-Astrue cannot give medical opinions, "their statements may be taken into account to show the severity of impairments and how they affect the ability to work." 20 C.F.R. § 416.913(d). The Commissioner also notes that, as part of the psycho diagnostic examination of plaintiff he conducted in January, 2002, Dr. Joe Wood, Psy.D., conducted a clinical interview, took a history, conducted a mental status examination, and reviewed plaintiff's earlier chart summaries, including those from Dr. Boverman's evaluation. In rejecting Dr. Boverman's assessment of plaintiff's GAF score, the ALJ noted that plaintiff had no difficulty interacting with Dr. Wood, reported that he had not had a panic attack for one year, had normal mental status test results, and reported "abilities in preparing foods, engaging in household and car repairs, operating a computer, reading magazines, and watching television." The ALJ also noted that Dr. Wood questioned Dr. Boverman's panic disorder diagnosis, and assigned a GAF score that reflected only moderate functional limitations.

Because Dr. Boverman's opinion was contradicted by other medical opinion, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the medical record, for its rejection. The ALJ satisfied that requirement.

Gregory Cole, Ph.D.

Dr. Cole conducted a neuropsychological consultation on January 5, 2008. Dr. Cole performed objective testing, and assessed plaintiff with a dysthymic disorder; anxiety disorder, not otherwise specified; alcohol abuse; avoidant personality disorder; and rule out learning disorders in areas of reading and mathematics. In a Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Cole assessed mild restrictions in understanding and remembering and carrying out complex instructions, and in the ability to make judgments on complex and work-related decisions. He assessed moderate restrictions in plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, and in plaintiff's ability to respond to usual work situations and to changes in a routine work setting.

The ALJ discussed Dr. Cole's findings at length, and stated that he gave "controlling weight" to Dr. Cole's RFC assessment.

Plaintiff asserts that the ALJ erred in giving "controlling" weight to the opinion of a non-treating doctor, and contends that, in failing to address the moderate limitations that Dr. Cole assessed in plaintiff's ability to interact with supervisors or respond appropriately in usual work settings or to changes in routine work settings, the ALJ erroneously rejected these portions of Dr. Cole's opinion.

The Commissioner acknowledges that the ALJ erred in purporting to accord Dr. Cole's assessment "controlling weight," as that term applies only to the weight given to the opinion of a treating doctor that must be adopted. See 20 C.F.R. § 416.927(d)2); SSR 96-2p, 1996 WL 374188 at *2. However, the Commissioner also correctly notes that the ALJ in fact also relied on the opinions of other sources, including state agency reviewing

FINDINGS AND RECOMMENDATION - 14

psychologists, and clearly stated that he based his RFC assessment on "all of the medical evidence of record and analysis of the claimant's testimony."

More significantly, the Commissioner correctly notes that the term "moderate," as used in Dr. Cole's analysis, is defined as "more than a slight limitation . . . but the individual is still able to function satisfactorily."  Any error that the ALJ may have made in failing to specifically address the limitations in question was harmless, given that, under the definition Dr. Cole applied, a moderate limitation would not prevent an individual from functioning satisfactorily.


Paul Guastadisegni, Ph.D.

In a letter addressed "to whom it may concern" dated August 14, 2000, Paul Guastadisegni, Ph.D., stated that he had recently been involved with plaintiff's "medical and psychiatric care" and had completed a comprehensive neuropsychological and psychological evaluation of plaintiff.  Dr. Guastadisegni stated that plaintiff was "suffering from intense anxiety" and required treatment, which was scheduled to begin that month.  He opined that plaintiff would require treatment for at least a year before he could function at a "high level."  Dr. Guastadisegni stated that plaintiff experienced "intense panic attacks" and distortions in his thinking, and at times exhibited irrational behavior.  He opined that plaintiff was not capable of being an "adequate member of a jury" at that time, and added that plaintiff "would be in a much better position to complete his civic duty" after he had "engaged in and benefited from treatment."

Plaintiff contends that the ALJ rejected this opinion without providing specific and legitimate reasons for doing so.

The commissioner correctly notes that, though he did not specifically discuss Dr. Guastadisegni's letter, the ALJ expressly noted that Dr. Wood had reviewed Dr. Guastadisegni's letter, and concluded that Dr. Wood provided specific reasons for questioning any diagnosis of a Panic Disorder, and assessed a GAF score that reflected only moderate functional limitations.  I agree with the Commissioner's assertion here that Dr. Guastadisegni's description of plaintiff's behavior, in the context of his evaluation of plaintiff's ability to be an "adequate" jury member, does not address work-related limitations, and does not equate to a finding of disability.  The ALJ adequately discussed the evidence and opinions of the medical sources, accurately summarized the medical evidence, and provided legally sufficient support for his findings.  Where, as here, the evidence is susceptible to more than one rational interpretation, and one of those interpretations supports the ALJ's decision, the decision must be upheld.  Rommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

3. Evaluation of plaintiff's drug and alcohol use

In a footnote on page 15 of his memorandum, plaintiff contends that the ALJ "did not conduct a proper evaluation regarding whether alcohol use was material" to his disability.

I disagree.   In 1996, Congress amended the definition of disability under the Social Security Act (the Act) to provide that an individual is not considered disabled if drug addiction or alcoholism would be "a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Accordingly, if there is evidence of drug or alcohol abuse, and a claimant establishes that he is disabled, the ALJ must determine whether the claimant would be disabled if the substance abuse ceased.

20 C.F.R. § 416.935(b)(2).  Here, because the ALJ did not find that plaintiff was disabled, he was not required to determine whether he would not be disabled if he did not abuse alcohol.


4. ALJ's evaluation of plaintiff's credibility

As noted above, in his evaluation of plaintiff's limitations, the ALJ found that plaintiff was not entirely credible in comparison to the "substantial evidence in the record."

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment, the ALJ  may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998), (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc)). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Id., (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies or contradictions between the claimant's complaints and his activities of daily living.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

In support of his credibility determination here, the ALJ noted that, during his most recent psychological evaluation, plaintiff reported significant independent activities of daily living.  He noted that plaintiff did household chores, including such activities as washing dishes, sweeping, mopping, vacuuming, and doing the laundry, and that he cooked simple meals.  He noted that plaintiff shopped twice a month without the need to use a list, and that

FINDINGS AND RECOMMENDATION - 17

he maintained a bank account.  The ALJ noted that plaintiff enjoyed watching television and

surfing the internet.  The ALJ concluded that these activities were inconsistent with plaintiff's

"claimed limitations."  He also observed that plaintiff's descriptions of his symptoms were

vague and generalized, and that plaintiff's reported limitations in concentration, and his

allegations that his symptoms were worsening, were not supported by the medical record.

In addition, the ALJ asserted that plaintiff's non-compliance with "medications, counseling,

and treatment" supported the conclusion that plaintiff was not entirely credible.  The ALJ

adequately supported his conclusion that plaintiff's description of his symptoms and

limitations was not wholly credible.  The ALJ did not entirely reject plaintiff's description of

his limitations, which are reflected at least in part in the ALJ's RFC analysis.  To the extent

that he did not credit plaintiff's testimony, the ALJ provided clear and convincing reasons for

his credibility determination.


5. Evaluation of credibility of lay witnesses

Testimony from non-medial sources may be used to show the severity of a claimant's

impairments and how those impairments affect a claimant's ability to work.  20 C.F.R.

§ 416.913(d).  An ALJ must take into account lay testimony concerning a claimant's

symptoms unless he or she "gives reasons germane to each witness for doing so."  Lewis v.

Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Plaintiff's mother testified that plaintiff's condition appeared to have deteriorated

during the previous few years.  She testified that plaintiff was withdrawn and depressed, had

no motivation to do anything, sometimes did not get out of bed at all, sometimes completely

lost his temper over trivial matters, and would not go to the store without her.  In finding that

plaintiff's mother was not entirely credible, the ALJ cited discrepancies in her testimony about medical coverage and discrepancies between her testimony and plaintiff's testimony concerning plaintiff's use of prescription medications and participation in recommended treatment.  These reasons were germane, and were sufficient to support the ALJ's credibility determination.

In addition to the testimony of plaintiff's mother, the record includes written statements from plaintiff's mother, brother, aunt, and grandfather describing plaintiff's symptoms and limitations.  The ALJ did not specifically address these statements, and erred in failing to do so.  Under the circumstances presented here, however, I conclude that the failure to specifically address these statements did not constitute reversible error, because, by inference, the reasons that the ALJ gave for finding plaintiff less than wholly credible apply as well to the statements of the other witnesses.  These witnesses described symptoms and limitations that were inconsistent with the activities of daily living that the ALJ cited in finding plaintiff less than wholly credible.  Under these circumstances, I find the ALJ's failure to specifically address the witness statements in question was harmless error.  See, e.g., Stout v. Commissioner, 454 F.3d 1050, 1054 (9th Cir. 2006) (reviewing court may consider failure to discuss lay evidence harmless error where it can conclude that no reasonable ALJ who fully credited the testimony in question could have reached a different disability determination).  Here, an ALJ crediting the witness statements in question could not have found plaintiff disabled in light of other evidence concerning plaintiff's activities of daily living and substantial medical evidence supporting the ALJ's RFC determination.

6. ALJ's RFC assessment and findings at step five

Where, as here, he relies upon the testimony of a VE at step five of the sequential disability analysis, the ALJ must pose to the VE a hypothetical that is accurate. E.g., Ostenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001). In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 447 (8th Cir. 1983)). The ALJ's depiction of the claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions in the hypothetical are not supported by the record, a VE's opinion that a claimant can work lacks evidentiary value. Gallant, 753 F.3d at 1456.

Plaintiff contends that the ALJ's RFC analysis was deficient because the ALJ improperly rejected medical opinions, statements, and testimony, and that the ALJ's hypothetical to the VE had no evidentiary value because it was based upon an RFC that did not include all of plaintiff's limitations. I disagree. The ALJ here cited substantial evidence in the record supporting his assessment of plaintiff's RFC, and posed a hypothetical that described an individual of plaintiff's age, education, and experience, who had the limitations that he concluded were supported by the record. The ALJ's RFC assessment was supported by ample evidence in the record, and the VE's opinion that the described individual could perform work that existed in substantial numbers in the national economy has evidentiary value. The ALJ's decision, which is now the decision of the Commissioner, should be affirmed.

## <u>Conclusion</u>

The Commissioner's decision finding that plaintiff is not disabled should be

AFFIRMED, and a judgment should be entered dismissing this action with prejudice.


## <u>Scheduling Order</u>

This Findings and Recommendation will be referred to a district judge. Objections,

if any, are due August 23, 2010. If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 4th day of August, 2010.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION - 21